UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

TYRELL FRANCIS,

                                        Plaintiff,

        -against-                                        1:20-CV-00703 (LEK/TWD)

CITY OF SCHENECTADY, *et al.*,

                                        Defendants.

---

## MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

        Plaintiff Tyrell Francis commenced this action pursuant to 42 U.S.C. §§ 1983 and 1988 on June 24, 2020, against the City of Schenectady (or "City"), the County of Schenectady (or "County"), Detective Craig Comley of the Schenectady Police Department (or "SPD"), and John and Jane Doe Defendants 1–10 ("John and Jane Doe Defendants"). Dkt. No. 1 ¶¶ 1, 7–11, 14 ("Complaint"). The County of Schenectady filed a motion to dismiss, Dkt. No. 8, and On March 24, 2021, this Court issued a Memorandum-Decision and Order that terminated the County from the docket. Dkt. No. 18 at 5 ("March 2021 Order"). Thereafter, the City of Schenectady, Comley, and John and Jane Doe Defendants remained. See generally Docket.

        On January 21, 2022, Plaintiff filed a motion for leave to file an amended complaint, bringing § 1983 and § 1988 claims against the City of Schenectady, Schenectady Police Department Detectives Craig Comley, Steven Nelson, Bret Ferris, Christopher Semione, Eric Peters, Shane Cieszynski, Matthew Hoy, and unnamed John and Jane Doe Defendants 1–10. Dkt. No. 53-3 ¶¶ 12, 20 ("Plaintiff's Proposed Amended Complaint"); Dkt. No. 53 ("Plaintiff's Motion to File Amended Complaint"). On February 22, 2022, the City of Schenectady and

Comley (collectively, "Defendants") filed a Cross-Motion to Dismiss Plaintiff's Complaint and in Opposition to Plaintiff's Motion for Leave to File an Amended Complaint. Dkt. No. 61 ("Defendants' Cross-Motion"). Plaintiff filed a response on April 29, 2022. Dkt. No. 67 ("Plaintiff's Response"). Defendants filed a reply on May 6, 2022. Dkt. No. 68 ("Defendants' Reply"). For the reasons that follow, the Court grants Plaintiff's Motion to File Amended Complaint and denies Defendants' Cross-Motion.

## II.    BACKGROUND

The factual allegations in Plaintiff's original Complaint are set forth in the Court's March 2021 Order, familiarity with which is assumed. March 2021 Order at 1–2.

With regard to Plaintiff's Proposed Amended Complaint, Plaintiff alleges that "[o]n September 13, 2018, plaintiff attended a meeting with his parole officer, at which time he was arrested on a parole violation and thereafter imprisoned in the Schenectady County Jail." Dkt. No. 53-1 at 2 ("Plaintiff's Memorandum of Law"). Plaintiff asserts:

> Thereafter, on October 10, 2018, just prior to plaintiff's planned transfer to a New York State correctional institution operated by the New York State Department of Corrections and Community Supervision [('DOCCS')], where plaintiff was to serve out an approximately 90 day sentence on the aforementioned parole violation, plaintiff was instead produced to the Schenectady County Sheriff's Office.

Id. According to Plaintiff, he

> was then falsely arrested at that time by and/or otherwise based on the false allegations of defendant SPD Detectives Craig Comley, Steven Nelson, Bret Ferris, Christopher Semione, Eric Peters, Shane Cieszynski, and/or Matthew Hoy, whose false allegations were provided to County prosecutors and sworn to by defendant Comley, and resulted in [Plaintiff] being charged with two counts of criminal sale of a controlled substance, a Class B Felony, for offenses that allegedly occurred on September 11, 2018 and September 13, 2018.

Id. Plaintiff asserts that he "was returned to the custody of the Schenectady County Jail and imprisoned there solely on the basis of this new arrest." Id.

Plaintiff claims that he "was arrested notwithstanding that defendants knew or otherwise deliberately disregarded the fact that plaintiff could not have committed the September 13, 2018 offense insofar as he was at the NYS Parole office to meet with his parole officer at the time of the alleged offense." Id. at 2–3. According to Plaintiff this "verifiable alibi as to the September 13, 2018 incident . . . vitiated probable cause to arrest as to the September 11, 2018 offense." Id. at 3. Plaintiff also states that he "had a verifiable alibi as to the September 11, 2018 offense, to wit: plaintiff had attended a dinner with his fiancé, which was hosted by his friend, and both parties were able to attest to plaintiff's presence at the dinner on the aforementioned date." Id.

Plaintiff asserts that

> Comley, Nelson, Ferris, Semione, Peters, Cieszynski, and Hoy should have been aware based on past experience and/or first hand observations made on September 11, 2018 and September 13, 2018, that plaintiff was not the individual who they were seeking for the sales that they allege occurred on September 11, 2018 and September 13, 2018.

Id. Plaintiff alleges that "defendant Comley manufactured evidence against plaintiff, including by preparing a suggestive and tainted photo array, and forward[ed] to the Schenectady County District Attorney the false result of the array and information that plaintiff was purportedly in possession of and sold a controlled substance on the dates in question." Id. Plaintiff further alleges that Comley, Nelson, Ferris, Semione, Peters, Cieszynski, and Hoy "initiated a malicious prosecution against plaintiff by falsely swearing out felony complaints charging plaintiff with criminal sale of a controlled substance in the third degree, resulting in plaintiff being maliciously prosecuted in Schenectady County Court." Id. Plaintiff also alleges that

> Comley, Nelson, Ferris, Semione, Peters, Cieszynski, Hoy and John
> and/or Jane Doe 1 through 10 either directly participated in the false
> arrest, manufacturing of evidence, and/or malicious prosecution of
> plaintiff, or failed to intervene in said constitutional violations
> despite being present for and/or aware that said violations were
> occurring and despite a meaningful opportunity to intervene.

Id. at 4. According to Plaintiff, after he was incarcerated in Schenectady County Jail "the charges

were dismissed and sealed in Schenectady County City Court, and plaintiff was released into

New York State custody to then serve out his aforementioned sentence for his parole violation."

Id. at 3–4.

The City of Schenectady and Comley dispute Plaintiff's version of the facts. According

to Defendants, four criminal charges were filed against Plaintiff, but Plaintiff contests only the

charges for criminal possession of a controlled substance on September 11, 2018, and September

13, 2018. Dkt. No. 61-15 at 1 ("Defendants' Memorandum of Law"). Defendants assert:

"[Comley] directly and personally observed Plaintiff engage with the SPD's CI [('Confidential

Informant')] on both September 11, 2018 and September 13, 2018 (controlled wire buys that

[Comley] recorded through video and audio surveillance footage) . . . ." Id. at 23 (emphasis

omitted). Furthermore, Defendants assert that "[Comley] additionally conducted a valid photo

array on September 25, 2018, where the same CI who was present with Plaintiff during the

September 11, 2018 and September 13, 2018 controlled wire buys identified Plaintiff out of a

photo array consisting of six (6) very similar individuals . . . ." Id. at 24. Plaintiff contests these

assertions at length in his Response. Pl.'s Resp. at 9–12.

## III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a)(2), notwithstanding the provisions set forth

in Rule 15(a)(1): "[A] party may amend its pleading only with the opposing party's written

consent or the court's leave. The court should freely give leave when justice so requires." Fed. R.

Civ. P. 15(a)(2). "Rule 15 of the Federal Rules of Civil Procedure establishes a liberal policy in favor of allowing amendments." Warboys v. Proulx, 303 F. Supp. 2d 111, 115 (D. Conn. 2004); United States v. New York, 82 F.R.D. 2, 4 (N.D.N.Y. 1978) ("[C]ourts have shown a strong liberality in allowing amendments under Rule 15(a), Fed.R.Civ.P., in recognition of the principle that controversies should be decided on the merits whenever practicable."). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowing the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962). "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." Id.

## IV.   DISCUSSION

Defendants argue that Plaintiff's Proposed Amended Complaint should be denied based on bad faith, undue delay, and futility. Defs.' Mem. of Law at 1–2.

### A.  Bad Faith

"Few courts have denied leave to amend on the basis of bad faith." Oneida Indian Nation v. Cnty. of Oneida, 199 F.R.D. 61, 80 (N.D.N.Y. 2000). "It is well established . . . that 'when the opponent of an amendment asserts that the movant is acting in bad faith, there must be something more than mere delay or inadvertence' to warrant denial of a Rule 15 motion.'" Id. (quoting Primetime 24 Joint Venture v. DirectV, Inc., No. 99-CV-3307, 2000 U.S. Dist. LEXIS 5022, at *20 (S.D.N.Y. Apr. 6, 2000)). "A finding that a party is seeking leave to amend solely to

gain a tactical advantage . . . supports a finding that such an amendment is made in bad faith." Oneida Indian Nation, 199 F.R.D. at 80. "However, 'it is [often] hard to tell the difference between a legitimate strategic choice and bad faith conduct, and courts generally reject conclusory allegations of bad faith when evaluating a motion to amend.'" Trask v. Town of Alma, No. 19-CV-01192, 2020 U.S. Dist. LEXIS 204107, at *7 (W.D.N.Y. Oct. 30, 2020) (quoting Underwood v. Roswell Park Cancer Inst., No. 15-CV-684, 2017 U.S. Dist. LEXIS 66768, at *9 (W.D.N.Y. May 2, 2017)).

In their briefing, Defendants merely offer a conclusory assertion that Plaintiff is acting in bad faith in seeking to file the Proposed Amended Complaint, and do not indicate how or why Plaintiff is seeking to gain a tactical advantage. Defs.' Mem. of Law at 2. Therefore, the Court finds that there is no basis to deny leave to amend on the grounds of bad faith.

**B.  Undue Delay**

"Mere delay, . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981); Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993); Yaba v. Cadwalader, Wickersham & Taft, 931 F. Supp. 271, 275 (S.D.N.Y. 1996) ("A party resisting amendment must usually show prejudice or bad faith in addition to undue delay."). "[C]ourts have permitted amendments despite the fact that the motion was made at later stages in the litigation after considerable delay." EEOC v. Thomas Dodge Corp., 524 F. Supp. 2d 227, 231 (E.D.N.Y. 2007) (collecting cases).

As noted above, the Court finds no basis to deny leave to amend on the grounds of bad faith. Therefore, there is no reason to find that Plaintiff caused undue delay due to bad faith.

The Court must now determine whether there would be undue prejudice in permitting the amendment. "[W]hen determining whether undue prejudice would result in a particular case, the Second Circuit has instructed district courts to ask whether the proposed amendments would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." Sly Magazine, LLC v. Weidner Publ'ns L.L.C., 241 F.R.D. 527, 532 (S.D.N.Y. 2007) (quoting Block, 988 F.2d at 350). "The inquiry involves a balancing process that weighs the potential prejudice to the opposing party against the disadvantage the moving party would face if the motion to amend were denied." Cook v. City of New York, 243 F. Supp. 3d 332, 355 (E.D.N.Y. 2017). "[T]he non-moving party bears the burden of demonstrating that 'substantial prejudice would result if the proposed amendment were granted.'" Id. (quoting Agerbrink v. Model Serv. LLC, 155 F. Supp. 3d 448, 454 (S.D.N.Y. 2016)).

In this case, discovery is still ongoing. Dkt. No. 66. Defendants assert that Plaintiff's Complaint and Proposed Amended Complaint "are categorically a waste of this Court's (and the City's) finite time and resources, and this matter should promptly be dismissed . . . ." Defs.' Mem. of Law at 16.

"Although defendants argue that the necessity of additional discovery would cause undue prejudice, this alone is not sufficient grounds to deny the motion to amend." Cook, 243 F. Supp. 3d at 355. "A court is more likely to find an amendment prejudicial if discovery has closed." Scott v. Chipotle Mexican Grill, Inc., 300 F.R.D. 193, 200 (S.D.N.Y. 2014). The Court finds that the Proposed Amended Complaint will not significantly delay the resolution of this dispute, and therefore will not cause undue prejudice. Even if additional discovery is necessary, "the

possibility 'that an amendment will require the expenditure of additional time, effort, or money
[does] not constitute undue prejudice.'" _Agerbrink_, 155 F. Supp. 3d at 455 (cleaned up) (quoting
_A.V. by Versace, Inc. v. Gianni Versace, S.p.A._, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000)).

     Finally, it does not appear that Plaintiff's addition of new named parties that replace
certain John and Jane Doe Defendants would raise factual claims unrelated to his original
Complaint, nor would this materially affect discovery. _See_ _Agerbrink_, 155 F. Supp. 3d at 455
("Whether a party had prior notice of a claim and whether the new claim arises from the same
transaction as the claims in the original pleadings are central to the undue prejudice analysis.");
_cf._ _A.V. by Versace_, 87 F. Supp. 2d at 299 ("Although the proposed amendments would implead
additional parties, [plaintiff's] claims against [impleaded defendants] do not raise factual claims
unrelated to the events in its original third-party complaint. In fact, there is no indication . . . that
the addition of [two impleaded parties] would in any way materially affect the duration or scope
of discovery." (citation omitted)).

     For these reasons, the Court concludes that Defendants would not be unduly prejudiced
by allowing Plaintiff to file this Proposed Amendment, and thus finds no basis to deny leave to
amend for undue delay.

### C. Futility

     "It is well established that '[l]eave to amend need not be granted . . . where the proposed
amendment would be futil[e].'" _Williams v. Citigroup, Inc._, 659 F.3d 208, 215 (2d Cir. 2011)
(cleaned up) (quoting _Advanced Magnetics, Inc. v. Bayfront Partners, Inc._, 106 F.3d 11, 18 (2d
Cir. 1997)). "To determine whether a proposed pleading is futile, courts analyze whether it
would withstand a motion to dismiss." _Agerbrink_, 155 F. Supp. 3d at 456. "Proposed
amendments are futile when they 'would fail to cure prior deficiencies or to state a claim under

Rule 12(b)(6) of the Federal Rules of Civil Procedure." Seemann v. Coastal Envtl. Grp., Inc.,

219 F. Supp. 3d 362, 266 (quoting IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund

v. Royal Bank of Scotland Grp., PLC, 783 F.3d 383, 389 (2d Cir. 2015)).

"[A] complaint should be dismissed only if it does not contain enough allegations of facts

to state a claim for relief that is 'plausible on its face.'" Seemann, 219 F. Supp. 3d at 367

(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual

enhancement.'" Id. (quoting Twombly, 550 U.S. at 557). "As when considering a motion to

dismiss under Rule 12(b)(6), the court must accept as true all well-pleaded facts and draw all

reasonable inferences in the moving party's favor." Agerbrink, 155 F. Supp. 3d at 456. "The

opposing party [to a motion for leave to amend] bears the burden of establishing that an

amendment would be futile." Amaya v. Roadhouse Brick Oven Pizza, Inc., 285 F.R.D. 251, 253

(E.D.N.Y. 2012); see also Blaskiewicz v. Cnty. of Suffolk, 29 F. Supp. 2d 134, 138 (E.D.N.Y.

1998) ("The party opposing such amendment has the burden of establishing that leave to amend

would be prejudicial or futile.").[1]

---

[1] Defendants often raise the futility argument in passing. For instance, Defendants do not
specifically brief the Court on futility in their Point II argument, in which they allege that
Plaintiff's so-called "UNKNOWN IDENTITY" theory is untrue. Defs.' Mem. of Law at 11–16.
Because the party opposing a motion for leave to amend bears the burden of establishing that an
amendment would be futile, the Court will not address futility as to these matters, because the
Defendants did not specifically brief them, and therefore, have not met their burden. See Amaya,
285 F.R.D. at 253; Blaskiewicz, 29 F. Supp. 2d at 138.

### 1. Statute of Limitations

Defendants argue that Plaintiff's state law claims are time-barred for failing to commence his claims based on the relevant statute of limitations. Defs.' Mem. of Law at 5–7. Defendants also assert that Plaintiff's federal claims are time-barred by arguing that Governor Andrew Cuomo's Executive Order tolling the New York State statute of limitations did not toll the statute of limitations for Plaintiff's federal law claims. Id. at 8–10. Plaintiff contests these arguments in his Response. Pl.'s Resp. at 5–8.

Courts in this Circuit are split on whether a plaintiff must plead facts in her complaint to overcome a defendant's statute of limitations affirmative defense. Compare Garcia v. Pancho Villa's of Huntington Vill., Inc., 268 F.R.D. 160, 166 (E.D.N.Y. 2010) (finding that "the statute of limitations is an affirmative defense, the determination of which requires a consideration of the merits of both parties' claims and defenses" and finding that "permitting plaintiffs to amend their Complaint is not futile"); Kattu v. Metro Petroleum, Inc., No. 12-CV-54, 2013 U.S. Dist. LEXIS 110413, at *2 (W.D.N.Y. Aug. 6, 2013) ("Despite the strict pleading standards of Bell Atlantic Corp. v. Twombly and Ashcroft v. Iqbal, plaintiffs are not required to plead facts in a complaint to rebut a potential statute of limitations defense, an affirmative defense that is waived by a defendant if not alleged in an answer." (citations omitted)); and Sexton v. Franklin First Fin., Ltd., No. 08-CV-04950, 2009 U.S. Dist. LEXIS 50526, at *55 (E.D.N.Y. June 16, 2009) ("[P]laintiff is not required to have alleged facts in the complaint that overcome defendants' affirmative defense based on the statute of limitations."); with De la Fuente v. DCI Telecomms., Inc., 206 F.R.D. 369, 387 (S.D.N.Y. 2002) ("Because this Court holds that plaintiffs' claims . . . are barred by the statute of limitations, any attempt to amend would be futile."); and Gutkowski v. Steinbrenner, 680 F. Supp. 2d 602, 616 (S.D.N.Y. 2010) ("In any event, construing Plaintiff's

argument as a motion to amend his complaint, the Court denies the motion on the grounds of futility, as the statute of frauds and the statute of limitations infirmities . . . render futile any proposed amendment."). In light of the dispute between the parties over how state and federal statutes of limitations will affect the outcome of this case, the fact that the statute of limitations is an affirmative defense, and Rule 15(a)(2)'s exhortation that "[t]he court should freely give leave [to amend] when justice so requires[,]" Fed. R. Civ. P, Rule 15(a)(2), the Court finds granting Plaintiff leave to amend would not be futile in this instance.

    2.   *Failure to State a Claim under § 1983 and Failure to Allege Personal Involvement with regard to Comley, Nelson, Ferris, Semione, Peters, Cieszynski, and Hoy*

Defendants assert that Plaintiff has failed to state claims pursuant to § 1983 for false arrest and imprisonment, malicious prosecution, and the right to a fair trial. Defs.' Mem. of Law at 20.

### a.  § 1983 False Arrest Claim

"A § 1983 false arrest claim is grounded in the Fourth Amendment right of an individual to be free from unreasonable seizures." LaFever v. Clarke, 525 F. Supp. 3d 305, 329 (N.D.N.Y. 2021). Under the Fourth Amendment to the U.S. Constitution: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "A § 1983 claim for false arrest sounding in the Fourth Amendment is 'substantially the same' as a claim for false arrest under New York law." Jackson v. City of New York, 939 F. Supp. 2d 235, 248 (E.D.N.Y. 2013) (quoting Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003)). "Under New York law, the torts of false arrest and false

imprisonment are 'synonymous.'" <u>Jackson</u>, 939 F. Supp. 2d at 248 (quoting <u>Posr v. Doherty</u>, 944 F.2d 91, 96 (2d Cir. 1991)). "To establish a claim under § 1983 for false arrest a plaintiff must show that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." <u>Jackson</u>, 939 F. Supp. 2d at 248 (quoting <u>Carson v. Lewis</u>, 35 F. Supp. 2d 250, 257 (E.D.N.Y. 1999)).

"The existence of probable cause is a complete defense to a § 1983 claim for false arrest." <u>Jackson</u>, 939 F. Supp. 2d at 248. "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." <u>Weyant v. Okst</u>, 101 F.3d 845, 852 (2d Cir. 1996). "The existence of probable cause may be determined as a matter of law provided there is no factual dispute regarding the pertinent events and knowledge of the officers." <u>Jackson</u>, 939 F. Supp. 2d at 248.

Both parties vigorously contest the existence of probable cause. Defendants place great weight on a confidential informant's identification of Plaintiff based on a photo array. Defs.' Mem. of Law at 24. However, identification using a photo array is not necessarily sufficient to establish probable cause. <u>See</u> <u>Mara v. Rilling</u>, 921 F.3d 48, 75 (2d Cir. 2019) ("[T]elling a witness he 'had to pick someone' from a photo array would make the ensuing identification both inadmissible at trial and too defective to support probable cause." (citing <u>Jenkins v. City of New York</u>, 478 F.3d 76, 93 (2d Cir. 2007)); <u>Williams v. City of New York</u>, No. 10-CV-2676, 2012 U.S. Dist. LEXIS 19207, at *11 (E.D.N.Y. Feb. 15, 2012) (finding "[w]hile an unequivocal identification is generally sufficient to establish probable cause, an identification that is tentative

12

or uncertain may, on its own, be insufficient" when assessing an arrest based on identification

after viewing a photo array). Additionally, Defendants argue that Comley "directly and

personally observed Plaintiff engage with SPD's CI on both September 11, 2018 and September

13, 2018". Defs.' Mem. of Law at 23 (emphasis omitted). Plaintiff argues that by making this

assertion "[n]ot only do defendants ask that the Court look to documents beyond the four corners

of the complaint to support this assertion, but they also improperly ask the Court to accept their

allegations, rather than plaintiff's as true." Pl.'s Resp. at 20. The Court finds that at this point in

time, in light of the "factual dispute regarding the pertinent events and knowledge of the

officers[,]" Jackson, 939 F. Supp. 2d at 248, and viewing the facts in the light most favorable to

Plaintiff, it is premature to rule on whether probable cause existed at this early stage in this case.

See Walker v. Vill. Of Freeport, No. 15-CV-4646, 2016 U.S. Dist. LEXIS 77582, at *13

(E.D.N.Y. June 13, 2016) ("[W]here disputes exist as to the pertinent events resulting in an

arrest, a finding of probable cause is improper at the motion to dismiss stage.").

    Plaintiff asserts that his "complaint pled facts sufficient to support that he was arrested,

he was confined in Schenectady County Jail solely on the basis of the arrest, and the court can

infer from the pleadings that plaintiff did not consent to the arrest." Pl.'s Resp. at 15; see also

Pl.'s Proposed Am. Compl. ¶¶ 12–13. In Plaintiff's Proposed Amended Complaint, Plaintiff

alleges: "Comely manufactured evidence against plaintiff, including preparing a suggestive and

tainted photo array, and forwarding to the Schenectady County District Attorney the false result

of the array and information that plaintiff was purportedly in possession of and sold a controlled

substance," Pl.'s Proposed Am. Compl. ¶ 17. Plaintiff also alleges that Comley, Nelson, Ferris,

Semione, Peters, Cieszynski, Hoy, and possible John and Jane Doe Defendants "either directly

participated in the false arrest . . . or failed to intervene in said constitutional violation . . . despite

being present for and/or aware that said violations were occurring and despite meaningful opportunity to intervene." Id. at ¶ 20. The Court finds that Plaintiff has pled facts that plausibly state a claim for false arrest by indicating that Comley, Nelson, Ferris, Semione, Peters, Cieszynski, Hoy, and John and Jane Doe Defendants intended to confine Plaintiff, Plaintiff was conscious of the confinement and did not consent to it, and, viewing the facts in the light most favorable to Plaintiff, the facts do not indicate the existence of probable cause to arrest Plaintiff. See Chisolm-Mitchell v. Ahmed, No. 20-CV-3434, 2020 U.S. Dist. LEXIS 217106, at *9 (E.D.N.Y. Nov. 19, 2020) ("According to the Amended Complaint, Chisolm-Mitchell was arrested against her will, with her knowledge, and at the instruction of Defendant Abear, thus fulfilling the first three elements of a false arrest claim. As to the fourth element, the Amended Complaint includes no facts suggesting that probable cause to arrest Chisolm-Mitchell existed. Thus, the Amended Complaint successfully pleads a false arrest claim against Defendant Abear with respect to Chisolm-Mitchell." (footnotes omitted)). For this reason, the Court finds that Plaintiff's § 1983 false arrest claim is not futile.

### b. § 1983 Malicious Prosecution Claim

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution under state law." Manganiello v. City of New York, 612 F.3d 149, 160–61 (2d Cir. 2010) (citations omitted). "As with false arrest, the elements necessary to prove malicious prosecution under § 1983 and New York state law are substantially the same." Mayzick v. Cnty. of Nassau, 32 F. Supp. 3d 399, 403 (E.D.N.Y. 2014). To state a claim for malicious prosecution under § 1983 a plaintiff

> must satisfy four elements. First, the plaintiff must show that the
> defendant initiated a criminal proceeding. Second, that proceeding

must have been terminated in favor of a plaintiff. Third, plaintiff must prove that no probable cause existed for the criminal charges. Lastly, the defendants must have acted maliciously.

Id. at 403.

Plaintiff alleges in his Proposed Amended Complaint that Comley, Nelson, Ferris, Semione, Peters, Cieszynski, Hoy, and possible John and Jane Doe Defendants, "initiated a malicious prosecution against plaintiff by falsely swearing out felony complaints charging plaintiff with criminal sale of a controlled substance in the third degree, resulting in plaintiff being maliciously prosecuted in Schenectady City Court." Pl.'s Proposed Am. Compl. ¶ 18. Accordingly, Plaintiff has pled facts that plausibly indicate Defendants initiated a criminal proceeding. See Ying Li v. City of New York, 246 F. Supp. 3d 578, 605 (E.D.N.Y. 2017) ("[A] defendant could have initiated a prosecution 'by creating material, false information and forwarding that information to a prosecutor or by withholding material information from a prosecutor.'" (quoting Costello v. Milano, 20 F. Supp. 3d 406, 415 (S.D.N.Y. 2014)).

Second, Plaintiff alleges that the charges upon which his arrest was based "were dismissed and sealed in Schenectady City Court . . . ." Id. ¶ 19. Defendants argue that Plaintiff has failed to establish favorable termination because "the Assistant District Attorney assigned to prosecute Plaintiff's criminal case was unable to comply with the Speedy Trial time limitations set forth in the NYS Criminal Procedure Law." Defs.' Mem. of Law at 26. However, the Supreme Court recently altered the landscape of malicious prosecution claims under § 1983 by holding in Thompson v. Clark: "To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." 142 S. Ct. 1332, 1335 (2022). Indeed, Defendants concede that "Plaintiff's criminal sale and possession

charges were dismissed . . . ." Defs.' Mem. of Law at 26. Thus, Plaintiff has alleged facts

showing that the proceeding terminated in his favor, because his prosecution ended without a

conviction.

Under the third prong of the § 1983 malicious prosecution standard: "Although probable

cause to prosecute is a complete defense to a claim of malicious prosecution, such probable

cause must be shown as to each crime charged in the underlying criminal action." Kee v. City of

New York, 12 F.4th 150, 166 (2d Cir. 2021) (citations omitted).[2] As noted above, whether

probable causes exists in this case is contested by the parties. See, e.g., Defs.' Mem. of Law at

23–26; Pl.'s Resp. at 19–20. For this reason, assessing the facts in the light most favorable to the

Plaintiff, the Court finds that Plaintiff's allegation that Comley, Nelson, Ferris, Semione, Peters,

Cieszynski, Hoy, and John and Jane Doe Defendants lacked probable cause, Am. Compl. ¶ 15, is

sufficient to plausibly state a claim for relief. See Benitez v. City of New York, No. 17-CV-

3827, 2018 U.S. Dist. LEXIS 99251, at *11 (finding in the context of a malicious prosecution

suit that when "Plaintiff alleges that all of the evidence used to secure his indictment was

fabricated" that [t]hese allegations, taken as true, sufficiently rebut the presumption of probable

cause created by a grand jury indictment").

"Under New York law, malice does not have to be actual spite or hatred, but means only

'that the defendant must have commenced the criminal proceedings due to a wrong or improper

motive, something other than a desire to see the ends of justice served.'" Lowth v. Town of

Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996). In this case, Plaintiff has pled facts indicating

that felony complaints were allegedly sworn in order to charge Plaintiff with criminal sale of a

---

[2] Accordingly, the Second Circuit has counseled that "probable cause to prosecute should not be
conflated with probable cause to arrest." Kee, 12 F.4th at 166.

controlled substance, despite knowing that Plaintiff was not the individual sought and that he had an alibi. Proposed Am. Compl. ¶¶ 16–17, 18. Indeed, "[k]nowingly filing a false report is strong evidence of malicious intent." Allen v. City of New York, 480 F. Supp. 2d 689, 717 (S.D.N.Y. 2006). Accordingly, the Court finds that this can be considered an improper motive and something other than a desire to see the ends of justice served. For this reason, Plaintiff has pled facts that plausibly meet the four requirements to state a claim for malicious prosecution under § 1983.

Defendants also argue that Plaintiff cannot bring a § 1983 malicious prosecution claim—or § 1983 false arrest or fair trial claims—"since plaintiff was already in custody at the time that the plaintiff's (new) challenged arrest took place." Defs.' Mem. of Law at 28. Defendants cite to Poulous v. Cnty. of Warren, No. , 2021 U.S. Dist. LEXIS 180640 (N.D.N.Y. 2021). Id. However, Poulous specifically stated that "if the plaintiff did not serve additional time because of the allegedly fraudulent charges, the incarcerated plaintiff did not suffer a deprivation of liberty." 2021 U.S. Dist. LEXIS 180640, at *12. Plaintiff argues: "Here, plaintiff specifically alleges that his detention in County jail was lengthened as a result of his false arrest, malicious prosecution, and denial of right to fair trial, and that his continued deprivation of liberty in County jail was *solely* as a result of defendants' actions." Pl.'s Resp. at 21–22 (emphasis in original). The case Allen v. City of New York is instructive; there the court found when a plaintiff alleged that "despite his federal prison sentence, he suffered a deprivation of liberty because his overall prison term was effectively lengthened, as a result of that time (post-arraignment) that he spent in state custody, awaiting resolution of the state charges[,]" 480 F. Supp. 2d at 717, that "[i]ncarceration, of any duration, represents a significant deprivation of liberty, sufficient to implicate the Fourth Amendment[,]" id. at 718, and allowed the plaintiff to

proceed with a malicious prosecution claim, id. Likewise, here Plaintiff suffered a deprivation of liberty when his detention was extended due to the time he spent in custody in Schenectady County Jail while he waited for the charges at issue in this case to be resolved. Accordingly, the Court finds no futility in this case, and the Court permits Plaintiff's malicious prosecution, false arrest, and fair trial claims to go forward.[3]

### c.  § 1983 Fair Trial

"To prove a Section 1983 fair trial claim, a plaintiff must establish that (1) the officer created false information, (2) the officer forwarded the false information to prosecutors, (3) the false information was likely to influence a jury's decision, and (4) the plaintiff suffered a deprivation of life, liberty, or property as a result of the officer's actions." Kee, 12 F.4th 168.

Defendants mistakenly argue that, similar to false arrest and malicious prosecution claims, probable cause vitiates Plaintiff's claim against Defendants with regard to Plaintiff's fair trial claims. Defs.' Mem. of Law at 23. However, fair trial claims are substantially different from malicious prosecution claims. In particular, "[a] section 1983 fair-trial claim . . . will not be defeated by evidence of probable cause because it 'cover[s] kinds of police misconduct not addressed by . . . malicious prosecution claims' and vindicates a different constitutional right— the right to due process protected by the Fifth and Fourteenth Amendments." Smalls v. Collins, 10 F.4th 117, 133 (2d Cir. 2021) (quoting Garnett v. Undercover Officer C0039, 838 F.3d 265, 278 (2d Cir. 2016)). The Fifth Amendment states: "No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V. Likewise, the Fourteenth Amendment states: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend XIV, § 1.

---

[3] Plaintiff's § 1983 fair trial claims are analyzed in greater detail immediately below.

"[U]nlike a plaintiff asserting a Fourth Amendment violation, a plaintiff may assert a violation of her due process rights even where the relevant deprivation was otherwise 'reasonable.'" Smalls, 10 F.4th at 133 (citation omitted) (quoting U.S. Const. amend. IV). "'Like a prosecutor's knowing use of false evidence to obtain a tainted conviction, a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable corruption of the truth-seeking function of the trial process,' and deprivation of life, liberty, or property under such circumstances violates the accused's right to due process." Smalls, 10 F.4th at 133 (cleaned up) (quoting Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997)). "No arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee." Ricciuti, 124 F.3d at 130.

Moreover, there is no "import[ation of] malicious prosecution's favorable-termination requirement onto section 1983 fair-trial claims." Smalls, 10 F.4th at 139. Instead "[w]here the plaintiff asserts a section 1983 fair-trial claim based on fabricated evidence, all that is required is that the underlying criminal proceeding be terminated in such a manner that the lawsuit does not impugn an *ongoing* prosecution or *outstanding* conviction." Id. (emphasis in original). "This requirement may be satisfied where a criminal conviction has been invalidated or a criminal prosecution has been terminated in the criminal defendant's favor because, in such circumstances, there is no risk that a section 1983 plaintiff's claim will impugn an existing conviction or the basis for an ongoing prosecution." Id. Bringing "a section 1983 fair-trial claim predicated on fabricated evidence guards against the deprivation of life, liberty, or property as a result of the corruption of due process, and therefore does not require a favorable termination indicative of innocence." Id. at 142–43 (footnote omitted).

As discussed above, Plaintiff has pled that Comley, Nelson, Ferris, Semione, Peters, Cieszynski, Hoy, and possible John and Jane Doe Defendants were involved in swearing out false felony complaints against Plaintiff alleging that he was responsible for two counts of criminal sale of a controlled substance and sending these documents to prosecutors for the purposes of prosecuting Plaintiff. Amend. Compl. ¶¶ 12, 14–20. The false statements alleged by Plaintiff would likely have affected a jury's decision. See Bertuglia v. City of New York, 839 F. Supp. 2d 703, 724 (S.D.N.Y. 2012) (denying a motion to dismiss brought against a § 1983 fair trial claim because the court found that "a statement to prosecutors that" a plaintiff "was a 'thief' and 'stole a lot of money' would have been false statements of fact" and that "[s]uch claims, if made to a jury would likely affect its verdict"). Moreover, as set forth in the Court's discussion of malicious prosecution, Plaintiff has pled deprivation of liberty, because his detention was extended due to the time he spent in custody in Schenectady County Jail while he waited for the charges at issue in this case to be resolved. Therefore, the Court finds that Plaintiff has pled facts that plausibly state a § 1983 fair trial claim, so there is no futility, and this claim may go forward.

d.   Personal Involvement

Additionally, Defendants argue that Plaintiff has not sufficiently pled personal involvement of Comley, Nelson, Ferris, Semione, Peters, Cieszynski, or Hoy with regard to Plaintiff's failure to intervene claims. Defs.' Mem. of Law at 16.[4]

"[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. "To allege

---

[4] The Second Circuit has stated: "[W]e recognize that law enforcement officials have an affirmative duty to intervene to protect against the infringement of constitutional rights from conduct committed by other officers in their presence." Curley v. Vill. Of Suffern, 268 F.3d 65, 72 (2d Cir. 2001).

personal involvement in the deprivation of a plaintiff's constitutional rights, a plaintiff must

allege facts showing a 'tangible connection between the acts of [each] defendant and the injuries

suffered.'" Putvain v. Baker, No. 20-CV-125, 2021 U.S. Dist. LEXIS 251144, at *15 (D. Vt.

Dec. 16, 2021) (quoting Bass v. Jackson, 790 F.2d 263 (2d Cir. 1986)). At this point in the

proceedings, the Court finds that Plaintiff has properly pled personal involvement as to Comley,

Nelson, Ferris, Semione, Peters, Cieszynski, and Hoy, and that Plaintiff will be able to more

effectively tailor his claims at the discovery stage. See Lawton v. Town of Orchard Park, No. 14-

CV-867, 2017 U.S. Dist. LEXIS 132588, at *25 (W.D.N.Y. Aug. 18, 2017) ("Although she does

not parse each individual defendant's role or personal involvement, [plaintiff]'s amended

complaint is minimally sufficient to survive [d]efendants' motion to dismiss. Discovery will

allow her to particularize her claims going forward.").[5]

### 3. *Failure to State a Claim under* *Monell*

Defendants further argue that Plaintiff has failed to state a § 1983 claim against the City

of Schenectady under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). Defs.' Mem. of Law

at 29.

---

[5] To the extent that Defendants seek to argue that Plaintiff fails to state a claim for failure to
intervene, Defs. Mem. of Law at 19–20, the Court finds that Plaintiff is permitted to plead failure
to intervene in the alternative as to Comley, Nelson, Ferris, Semione, Peters, Cieszynski, and
Hoy in the aforementioned alleged constitutional violations. See Matthews v. City of New York,
889 F. Supp. 2d 418, 444 (E.D.N.Y. 2012) ("Because plaintiffs properly allege at least one
constitutional violation, plaintiffs are entitled to discovery to determine which officers
participated directly in the alleged constitutional violation and which officers were present and
failed to intervene."); Durr v. Slator, 558 F. Supp. 3d 1, 26 (N.D.N.Y. 2021) ("Plaintiff does not
allege that either Defendant in particular acted with deliberate indifference by transporting
Plaintiff to the Oneida Police Station rather than the Upstate Emergency Department. As such,
Plaintiff is permitted to plead in the alternative that Defendants Clark and Slator failed to
intervene in the alleged constitutional violation.").

"'Monell claims'—which is to say § 1983 claim claims against a municipality—'are not subject to a heightened pleading standard and need only comply with the notice pleading requirement of Rule 8(a)(2) of the Federal Rules of Civil Procedure, i.e. that it include 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Cantey v. City of New York, No. 10-CV-4043, 2012 U.S. Dist. LEXIS 182323, at *6 (S.D.N.Y. Dec. 11, 2012) (quoting Poux v. Cnty. of Suffolk, No. 09-CV-3081, 2010 U.S. Dist. LEXIS 44399, at *40 (E.D.N.Y. May 4, 2010)); Gym Door Repairs, Inc. v. N.Y. City Dep't of Educ., No. 12-CV-7387, 2015 U.S. Dist. Lexis 81168, at *13–14 (S.D.N.Y. June 22, 2015) (finding when the plaintiffs' "allegations are sufficient to satisfy Rule 8's notice pleading requirement" then "[c]onsequently, the [plaintiffs'] First Amendment Monell claim survives"); Thelwell v. City of New York, No. 13-CV-1260, 2015 U.S. Dist. LEXIS 98406 (S.D.N.Y. July 28, 2015) ("Monell claims are subject to the same liberal pleading standards of Rule 8(a)(2)." (quoting Cantey, 2012 U.S. Dist. LEXIS 182323, at *51)); see also Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain: . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief . . . .").

"Although § 1983 subjects only 'person[s],' to liability, 42 U.S.C. § 1983, Monell established that 'a municipality . . . is a person within the meaning of Section 1983.'" Bellamy v. City of New York, 914 F.3d 727, 756 (2d Cir. 2019) (citation omitted) (quoting Vives v. City of New York, 524 F.3d 346, 350 (2d Cir. 2008)). "[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007) (citing Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983)). "Constitutional deprivations

actionable under § 1983 need not be contained in an explicitly adopted rule or regulation."
Sorlucco v. New York City Police Dep't, 971 F.2d 864, 870 (2d Cir. 1992). "Constitutional
deprivations actionable under § 1983 may be 'visited pursuant to the governmental custom even
though such custom has not received formal approval through the body's official decisionmaking
channels.'" Id. (cleaned up) (quoting Monell, 436 U.S. at 691).

Under the first prong of Monell liability: "An official policy 'includes the decisions of a
government's lawmakers, the acts of its policymaking officials, and practices so persistent and
widespread as to practically have the force of law.'" McDonald v. City of Troy, 542 F. Supp. 3d
161, 174 (N.D.N.Y. 2021) (quoting Connick v. Thompson, 563 U.S. 51, 61 (2011)). "Policies
can be 'pronounced or tacit,' and can take the form of 'either action or inaction.'" McDonald,
542 F. Supp. 3d at 174 (quoting Lucente v. Cnty. of Suffolk, 980 F.3d 284, 297 (2d. Cir. 2020)).
As another court in the Northern District has observed:

> [T]he Supreme Court has sanctioned four methods of proving out a
> Monell claim:
>
> (1) A policy formally adopted and endorsed by the municipality; (2)
> actions taken by policymaking officials that caused the particular
> deprivation alleged; (3) practices by subordinate officials that are
> not expressly authorized but are so widespread and consistent that
> policymakers must have been aware of them; or (4) a failure by
> policymakers to train or supervise that amounts to "deliberate
> indifference" to the rights of those who come into contact with the
> inadequately trained or supervised municipal employees.

McDonald, 542 F. Supp. 3d at 174 (quoting Crawley v. City of Syracuse, 496 F. Supp. 3d 718,
729) (N.D.N.Y. 2020)).

In the Proposed Amended Complaint, Plaintiff claims that the City of Schenectady "is
aware from sources that include lawsuits, notices of claims, complaints, news reports, internal
investigations, and failed prosecutions, that many SPD officers are insufficiently trained

regarding probable cause to arrest and engage in a practice of falsification to support unlawful arrests." Pl.'s Proposed Am. Compl. ¶ 22. Plaintiff also alleges that the City "is further aware that such improper training has often resulted in a deprivation of civil rights." Id. ¶ 23.

The case of Poux v. Cnty. of Suffolk is instructive. In Poux, the court assessed the plaintiffs' Monell allegations against Nassau County based on the "de facto policies, practices and customs of its police department in, *inter alia*, permitting private concerns to act as police officers and/or investigate officers; [and for] failing to properly screen, supervise, discipline, transfer, counsel, or otherwise control police officers engaged in the [] unconstitutional conduct . . . ." 2010 U.S. Dist. LEXIS 44399, at *41 (emphasis in original) (cleaned up). The Poux court found that "[c]ontrary to the contention of the Nassau County defendants, those allegations are sufficient at the pleadings stage to state a Monell claim against Nassau County." Id. According to the court in Poux: "Plaintiffs' allegations in support of their Monell claim are sufficient to satisfy the liberal pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure, insofar as they give the Nassau County defendants 'fair notice of what the [Monell] claim is [against Nassau County] and the grounds upon which it rests' so as to enable them to answer that claim and prepare for trial." Id. at *41–42 (quoting Twombly, 550 U.S. at 555); see also Cantey, 2012 U.S. Dist. LEXIS 182323, at *12 (Plaintiff's claim . . . is only at the motion to dismiss stage, and . . . Monell claims are subject to the same liberal pleading standards of Rule 8(a)(2)").

Similarly, here the Court finds that Plaintiff's pleadings provide fair notice to the City of Schenectady as to what the Monell claim against the City is and the grounds on which it rests, allowing the City to answer that claim and prepare for trial. Specifically, the Court finds that Plaintiff has pled facts that state a claim for relief based on the third prong discussed in McDonald by "alleging a practice so 'persistent and widespread,' or 'permanent and well

settled[,] as to constitute a custom or usage with the force of law' and to 'imply the constructive knowledge of policymaking officials' . . . ." Felix v. City of New York, 344 F. Supp. 3d 644, 653 (S.D.N.Y. 2018) (cleaned up) (citations omitted) (quoting Sorlucco, 971 F.2d at 870–71). Additionally, Plaintiff has pled facts that state a claim for relief based on the fourth prong discussed in McDonald by alleging deliberate indifference. See Pace v. Town of Southampton, 678 F.2d 79, 87–88 (E.D.N.Y. 2010) "Deliberate indifference may be shown by 'evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges' that its officers were violating citizens' constitutional rights." (quoting Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991))).

The Court now turns to the second prong of causation under Monell liability. "[M]unicipal actors sued under § 1983 are 'responsible for the natural consequences of their actions.'" Felix, 344 F. Supp. 3d at 654 (quoting Warner v. Orange Cnty. Dep't of Prob., 115 F.3d 1068, 1071 (2d Cir. 1996)). "This responsibility extends to the 'reasonably foreseeable' conduct of city employees." Felix, 344 F. Supp. 3d at 654 (quoting Dodd v. City of Norwich, 827 F.3d 1, 6 (2d Cir. 1987)). In this case, Plaintiff has pled in the Proposed Amended Complaint: "Despite such notice, defendant City of Schenectady has failed to take corrective action. This failure caused the officers in the present case to violate plaintiff's civil rights." Pl.'s Proposed Am. Compl. ¶ 23. The Court finds that Plaintiff has stated a claim asserting Monell liability causation. See Felix, 344 F. Supp. 3d at 654 ("[W]hen 'the city is aware that its policy may be unconstitutionally applied by inadequately trained employees but the city consciously chooses not to train them, or [when] the city's official policy . . . is valid, but the city's actual practice is [unconstitutional], the causation requirement may be met." (quoting Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 125–26 (2d Cir. 2004))).

25

Finally, the Court turns to the third prong required for <u>Monell</u> liability—denial of a constitutional right. As discussed above, Plaintiff has pled facts that plausibly state a claim for violations of his Fourth, Fifth, and Fourteenth Amendment rights. Accordingly, the Court finds that Plaintiff meets the third prong required for <u>Monell</u> liability and, accordingly, states a claim for relief pursuant to § 1983 and <u>Monell</u> against the City of Schenectady. Plaintiff's Proposed Amended Complaint is not futile, and his <u>Monell</u> claim can proceed.

### 4.  Qualified Immunity

Defendants argue that Comley, Nelson, Ferris, Semione, Peters, Cieszynski, and Hoy are protected by qualified immunity. Defs.' Mem. of Law at 32.

"Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." <u>Garcia v. Doe</u>, 779 F.3d 84, 92 (2d Cir. 2014) (quoting <u>Russo v. City of Bridgeport</u>, 479 F.3d 196, 211 (2d Cir. 2007)). "A Government official's conduct violates clearly established law when, as the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood what he is doing violates that right." <u>Allah v. Milling</u>, 876 F.3d 48, 59 (2d Cir. 2017) (quoting <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 741 (2011)). "Since qualified immunity is an affirmative defense, defendants 'bear the burden of showing that the challenged act was objectively reasonable in light of the law existing at the time.'" <u>Varrone v. Bilotti</u>, 123 F.3d 75, 78 (2d Cir. 1997) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 815 (1982)).

"The Second Circuit has . . . held that qualified immunity 'turns on factual questions that cannot be resolved at [the motion to dismiss] stage of the proceedings.'" <u>Vail v. Smith</u>, No. 12-

CV-234, 2013 U.S. Dist. LEXIS 58554, at *14 (N.D.N.Y. Jan. 17, 2013) (quoting Taylor v. Vermont Dep't of Educ., 313 F.3d 768, 793 (2d Cir. 2002)), report and recommendation adopted in 2013 U.S. Dist. LEXIS 32910 (N.D.N.Y. Mar. 11, 2013); see also Doe v. King, No. 20-CV-02331, 2021 U.S. Dist. LEXIS 173729, at *15 (S.D.N.Y. Sept. 13, 2021) ("The Court cannot conclude from the four-corners of the Second Amended Complaint and on the motion papers before it that Defendants are entitled to qualified immunity at this early pleading stage."). "For these reasons, any adjudication as to the applicability of the qualified immunity affirmative defense would be premature since '[r]esolution of qualified immunity depends on the determination of certain factual questions that cannot be answered at this stage of the litigation.'" Vail, 2013 U.S. Dist. LEXIS 58554, at *15 (quoting Denton v. McKee, 332 F. Supp. 2d 659, 666 (S.D.N.Y. 2004)).

For these reasons, the Court cannot conclude that Comley, Nelson, Ferris, Semione, Peters, Cieszynski, or Hoy are entitled to qualified immunity at this stage in the proceedings, and finds that granting leave to amend would not be futile.

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Motion to File an Amended Complaint (Dkt. No. 53) is **GRANTED** and Plaintiff may file and serve his amended his Complaint within 30 days of this Memorandum-Decision and Order pursuant to Local Rule 15.1(c); and it is further

**ORDERED**, that Defendants' Cross-Motion to Dismiss Plaintiff's Complaint and in Opposition to Plaintiff's Motion for Leave to File an Amended Complaint (Dkt. No. 61) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and

Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:       September 30, 2022
             Albany, New York

LAWRENCE E. KAHN
United States District Judge